Samuel M. KAYNARD, Acting Regional Director of the Second Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

METALLIC LATHERS AND REINFORCED CONCRETE STEEL WORKERS UNION, Local No. 46, of the Wood, Wire and Metal Lathers International Union, AFL–CIO, Respondent.

Civ. No. 60C 693.

United States District Court
E. D. New York.
Aug. 12, 1960.

Kimmell & Kimmell, Mineola, N. Y., for complaining party Prefabricated Concrete Inc., by Leonard S. Kimmell and Kay Kimmell, Mineola, N. Y.

Stuart Rothman, Gen. Counsel, N. L. R. B., by Charles B. Slaughter, Washington, D. C., and Theodore K. High, Cincinnati, Ohio.

Robert J. Fitzsimmons, New York City, for respondent, by John J. Mooney, New York City.

ZAVATT, District Judge.

The acting regional director of the National Labor Relations Board has petitioned this court pursuant to section 10($l$) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 160($l$), for a temporary injunction pending the final disposition of matters now before the Board. The petition alleges that respondent has picketed the plant of Prefabricated Concrete, Inc. ("Prefabricated"), the charging party, with the object of having Prefabricated assign certain metal work to its members rather than to employees who are members of another union, in violation of section 8 (b) (4) (D) of the Act as amended, 29 U.S.C.A. § 158(b) (4) (D).

The petition alleges and by its answer respondent admits the facts necessary to rest jurisdiction in this court. The facts dealing with the substantive matter I find to be as follows: Prefabricated was incorporated on June 22 of this year intending to manufacture reinforced concrete structural elements at its plant for use in building construction elsewhere by a building contractor. Its plant consists of forms resting on concrete beds laid on leased land in an isolated section of Nassau County called "Lawrence North". Prefabricated has assigned the work involved in its manufacturing processes,

including the handling and cutting of steel reinforcing bars, to its own employees who are members of, or are represented by Local 3127, United Brotherhood of Carpenters. Local 3127 was certified by the Board on July 20, 1960 as the collective bargaining agent for Prefabricated's production and maintenance employees. Prefabricated has a contract with Local 3127, dated July 22, 1960.

In late June, Mr. Richardson, a business agent of respondent arrived at the plant site. Full production had not begun at this time but work was in progress. Richardson spoke to several employees of Prefabricated who were cutting steel bars. He also conferred with Mr. Ring, the plant supervisor. By admission, Mr. Richardson's object at this time was to have the work of cutting and handling steel bars assigned to members of his union.

In the ensuing weeks there were visits by business agents of respondent to the plant site and discussion between them and Mr. Merrick, the president of Prefabricated, and Ring. By the time that the picketing began on the morning of July 26, respondent knew that the work in question had been assigned to employees who were represented by Local 3127; that that local had been certified as the bargaining representative for production employees; and that Prefabricated had entered into a contract with Local 3127.

Since July 26 there have been from two to five pickets at the site. During the time required for the hearing and determination of this petition, respondent has limited its picketing to the hours of 8 A.M. to 12 A.M. Prior to this informal and temporary agreement, the period of duty of the pickets corresponded to the working day at the plant which is from 7:30 A.M. to 4 P.M. The pickets stand at the point where the private road leading to the plant branches off from the access road. The pickets have conducted themselves peaceably. They carry a sign that reads:

NOTICE TO GENERAL PUBLIC
PICKETING FOR
INFORMATIONAL PURPOSES ONLY

PRE-FABRICATED CONCRETE EMPLOYEES ARE ENGAGED IN WORK NORMALLY PERFORMED IN THIS AREA BY METAL LATHERS AND ARE NOT RECEIVING METAL LATHERS WAGES AND ARE WORKING BELOW THE PREVAILING RATE. SUCH EMPLOYMENT DOWN WAGES, HOURS AND WORKING CONDITIONS IN THIS AREA ESTABLISHED BY LOCAL 46, WOOD, WIRE & METAL LATHERS INTERNATIONAL UNION A.F.L.-C.I.O.

The words "notice to general public picketing for informational purposes only" stand out because they are larger than the other words and are printed in red while the rest of the placard is in blue.

Drivers for Colonial Sand & Stone Co., Inc., (situated within a half a mile of Prefabricated's plant) from whom Prefabricated orders its concrete batches have refused to cross the picket line. Concrete batches have been ordered daily since the picketing began and trucks have been dispatched by Colonial to the site but, except on a single occasion, no deliveries have been accomplished. On all of these other occasions, drivers for Colonial have driven their trucks to the point where the pickets have stationed themselves and, upon observing the picket line, have refused to cross the same and make deliveries of concrete batches, have turned their trucks around and left the site—obviously to return to the site of Colonial without having made deliveries to Prefabricated.

The processes of manufacturing concrete slabs is such that a steady supply of concrete is required during the time when the forms are being poured. Were the plant at full production, concrete trucks would arrive at the plant during practically every hour of Prefabricated's workday, each day from Monday to and including Friday of each week.

■ The issue here is whether there is "reasonable cause" to believe that an

object of the picketing is to force a work assignment. The testimony of the business agents of the respondent that such was their original object, taken in conjunction with the subsequent picketing that effectively shut down the plant, provides reasonable cause aplenty that the union's object did not change, despite its contention that its object did change from the time when the union claims to have learned, for the first time, of the Board's certification of Local 3127. The respondent claims that from that time on its object and the object of its picketing was solely to advise the public that Prefabricated's scale of wages paid to those handling the steel bars was less than the prevailing scale of wages paid by comparable employers to comparable employees. The evidence adduced at the hearing failed to establish that there is a prevailing scale of such wages. The parties stipulated at the hearing that at least one such employer (having a contract with the respondent) pays a higher wage and that at least one such employer (having a contract with a union other than the respondent) pays a wage equal to that paid by Prefabricated.

I find that there is reasonable cause to believe that the object of the picketing by respondent was and continues to be to compel Prefabricated to assign certain of its production work to members of respondent union, none of whom are employees of Prefabricated. I find further that the effect of this picketing has been and will continue to be to induce and encourage individuals employed by persons engaged in commerce or in an industry affecting commerce to refuse to transport goods, articles, materials or commodities to Prefabricated.

Having found an unlawful object and an unlawful means of achieving it, the only question that remains is the scope of the injunction that must issue. Obviously, picketing at the plant during the hours that supplies are delivered must be enjoined and since deliveries are made at various hours throughout Prefabricated's working day picketing will be enjoined from 7:30 A.M. to 4:00 P.M., Monday through Friday of each week. That leaves for consideration informational picketing after working hours, during which time secondary employees cannot be affected. The second proviso to section 8(b) (4) is as follows:

Provided further, That for the purposes of this paragraph (4) only, nothing contained in such paragraph shall be construed to prohibit publicity, other than picketing, for the purpose of truthfully advising the public, including consumers and members of a labor organization, that a product or products are produced by an employer with whom the labor organization has a primary dispute and are distributed by another employer, as long as such publicity does not have an effect of inducing any individual employed by any person other than the primary employer in the course of his employment to refuse to pick up, deliver, or transport any goods, or not to perform any services, at the establishment of the employer engaged in such distribution;

I have been cited to no case before the Board or the courts construing this particular proviso, but on analysis of its language, the statutory scheme and the legislative history of the Act, as amended, I am satisfied that Congress intended to prohibit all picketing for the objects declared unlawful in section 8(b) (4) (D). This case is not comparable to a section 8(b) (4) (A) case, such as McLeod v. Hempstead Local 1921, United Brotherhood of Carpenters, D.C.E.D.N. Y.1960, 183 F.Supp. 494, or an 8(b) (7) case, such as McLeod v. Chefs Union, 2 Cir., 280 F.2d 760. Here, unlike McLeod v. Hempstead Local 1921, supra, there has been a Board certification. Here, unlike McLeod v. Chefs Union, supra, section 8(b) (4) not section 8(b) (7) is involved.

The petition is hereby granted. Settle an order consistent with this opinion. Pending the settlement of such an order the respondent, its officers, representa-

tives, agents, servants, employees and attorneys and all members and persons acting in concert or participation with it or them are hereby enjoined and restrained from picketing Prefabricated.

Settle an order consistent with this opinion within four days from the date hereof.